IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) ) ) | CV. NO.  09-00537 DAE-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| LEXINGTON INSURANCE COMPANY; and DOE DEFENDANTS 1–10, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER: (1) GRANTING LEXINGTON'S MOTION FOR SUMMARY
JUDGMENT; (2) DENYING NAUTILUS'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

On November 8, 2010, the Court heard Lexington's Motion for

Summary Judgment and Nautilus's Motion for Partial Summary Judgment.  Roy F.

Hughes, Esq., appeared at the hearing on behalf of Plaintiff Nautilus Insurance Co.

("Nautilus"); Randall Y. Yamamoto, Esq., appeared at the hearing on behalf of

Defendant Lexington Insurance Co. ("Lexington").  After reviewing the motions

and the supporting and opposing memoranda, the Court GRANTS Lexington's

Motion for Summary Judgment (Doc. # 22) and DENIES Nautilus's Motion for

Partial Summary Judgment (Doc. # 28).

BACKGROUND

This is an insurance coverage action, brought to determine the rights and obligations of Plaintiff Nautilus Insurance Co. ("Nautilus") and Defendant Lexington Insurance Co. ("Lexington") with regard to a state court lawsuit involving alleged personal injuries and property damage from construction work. The Court repeats the background facts only as is necessary for a decision on Lexington's Motion for Summary Judgment and Nautilus's Motion for Partial Summary Judgment. The essential facts of this case are not in dispute.

I.     The Underlying Action

On July 18, 2007, Kila Kila Builders ("Kila Kila") and VP & PK (ML) LLC ("VP & PK") among others were named as defendants in a Hawaii state court action, captioned Goo et al. v. Mayor Charmaine Tavares et al., Circuit Court for the Second Circuit of Hawaii, Civil No. 07-1-0258 (1) (the "Goo Action"). (Compl. Ex. 3, Doc. # 1 Ex. 1.)  VP & PK tendered its defense against the Goo Action claims to Nautilus on July 27, 2007 (Compl. ¶ 11), and Nautilus agreed under reservation of rights to defend VP & PK against these claims on August 30, 2007 (MSJ CSOF Ex. E, Docs. ## 23–24 ).[1]  VP & PK was also the named insured

_____

[1] Nautilus and Lexington submitted nearly identical documents in their Concise Statements of Facts in support of their respective motions.  For ease of

(continued...)

2

of a commercial general liability policy issued by Lexington.  (MSJ CSOF Ex. K at

0000548.)  On February 28, 2008, Nautilus notified Lexington of the Goo Action

and the claims asserted against VP & PK therein.  (MSJ CSOF Ex. J.)

        In 2008, the Hawaii state court ordered bifurcation of the Goo Action,

bifurcating the zoning and height restriction issues from the construction issues.

(MSJ CSOF, Declaration of Christine E. Savage ("Savage Decl.") ¶ 8.)  As a

result, on June 3, 2008, another suit was filed in Hawaii state court, captioned Goo

et al. v. VP & PK et al., Circuit Court for the Second Circuit of Hawaii, Civil No.

08-1-0298 (3) (the "Goo Construction Action" or the "underlying action").  (MSJ

CSOF Ex. G.)  The plaintiffs in the Goo Construction Action alleged that they

suffered damage to their residential real property as well as personal injuries from

construction of the Fairways at Maui Lani (the "Project").  (MPSJ CSOF Ex. B.)

VP & PK, the Project's developer (id. ¶ 18), and Kila Kila, a subcontractor of VP

& PK (id. ¶ 21), were both named as defendants in the Goo Construction Action.

Nautilus paid the entire cost of VP & PK's defense.  (MPSJ CSOF Ex. H,

Declaration of George W. Playdon ("Playdon Decl.") ¶ 2.)

---

[1](...continued)
reference, the Court will cite primarily to the Concise Statement of Facts in support
of Lexington's Motion for Summary Judgment.

A jury ultimately found VP & PK solely liable to eight owners of six homes for $232,700 damages in the <u>Goo Construction Action</u>, but found no liability against Kila Kila.  (MSJ CSOF Ex. H.)  On December 10, 2009, Lexington acknowledged that it would indemnify VP & PK for the jury verdict.  (MSJ CSOF Ex. I.)  Thereafter, Lexington satisfied the judgment against VP & PK in full. (MSJ CSOF Exs. A, B.)

II.     <u>The Nautilus and Lexington Policies</u>

    A.     <u>The Nautilus Policy</u>

        Nautilus issued to Duane P. King dba Kila Kila Builders a commercial general liability insurance policy, Policy Number NC459849, with a liability limit of $1 million per occurrence and $2 million aggregate ("Nautilus Policy"). ("Nautilus Pol.," MSJ CSOF Ex. D.)  VP & PK is an additional insured under the Nautilus Policy pursuant to an Additional Insured Endorsement, which states as follows:

> **SECTION II • WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule below, but only for liability arising out of your negligence and only for occurrences or coverage nor otherwise excluded in the policy to which this endorsement applies.
>
> **SCHEDULE**
> Name of Person or Organization:
> VP & PK (ML) LLC and Central Pacific Bank

99-880 Iwaena st
Aiea, Hi 96701
Project: The Fairways at Maui Lani     Cost $1.7 Million

(<u>Id.</u> at 00336.)  The Nautilus Policy includes the following additional relevant

language:

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      **Insuring Agreement**

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

. . . .

      (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

. . . .

## SECTION IV– COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

5

4.      **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.      **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other Insurance by the method described in **c.** below.

b.      **Excess Insurance**

This insurance is excess over:

(1)      Any of the other insurance; whether primary, excess, contingent or on any other basis:

(a)      That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b)      That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)      That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d)      If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section

I – Coverage A – Bodily Injury And
Property Damage Liability.

(2)     Any other primary insurance available to you
covering liability for damages arising out of the
premises or operations for which you have been
added as an additional insured by attachment of an
endorsement.

When this insurance is excess, we will have no duty
under Coverages A or B to defend the insured against
any "suit" if any other insurer has a duty to defend the
insured against that "suit".  If no other insurer defends,
we will undertake to do so, but we will be entitled to the
insured's rights against all those other insurers.

. . . .

## SECTION V – DEFINITIONS

. . . .

3.     "Bodily injury" means bodily injury, sickness or disease
sustained by a person, including death resulting from any of
these at any time.

. . . .

13.     "Occurrence" means an accident, including continuous or
repeated exposure to substantially the same general harmful
conditions.

. . . .

17.   "Property damage" means:

    a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Nautilus Pol.)

    B.   <u>The Lexington Policy</u>

Lexington issued to VP & PK a commercial general liability policy, Policy Number 1125737, with a liability limit of $1 million per occurrence and $2 million aggregate ("Lexington Policy").  ("Lexington Pol.," MSJ CSOF Ex. K.) The Lexington Policy includes the following relevant language:

## SECTION I – COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.      Insuring Agreement**

     a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

    . . . .

     (2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

. . . .

## SECTION IV – DEFINITIONS

. . . .

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

13.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

17.  "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or be deemed to occur at the time of the "occurrence" that caused it.

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

## SECTION V– CONDITIONS

. . . .

## 4.  Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

10

**a.** **Primary Insurance**
This insurance is primary except when b. Excess Insurance, below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other Insurance by the method described in c. Method of Sharing, below.

**b.** **Excess Insurance**

This insurance is excess over:

(1)     Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a)     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b)     That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c)     That is insurance purchased by you to your cover [sic] liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d)     If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

11

> (2)    Any other primary insurance available to you
> covering liability for damages arising out of the
> premises or operations . . . for which you have
> been added as an additional insured by attachment
> of an endorsement.
>
> When this insurance is excess, we will have no duty
> under Coverages A or B to defend the insured against
> any "suit" if any other insurer has a duty to defend the
> insured against that "suit".  If no other insurer defends,
> we will undertake to do so, but we will be entitled to the
> insured's rights against all those other insurers.

(Lexington Pol.)

## III.    Procedural History

On September 14, 2009, Nautilus filed a Complaint for Declaratory Judgment, Equitable Contribution and Reimbursement in Hawaii state court against Lexington and Doe Defendants 1–10.[2]  (See Compl.)  The Complaint requests the following relief: a declaration that Lexington owes to VP & PK a duty to defend and that Lexington breached that duty (First Claim for Relief) (id. ¶¶ 35–38); a declaration that Lexington owes to VP & PK a duty to indemnify and that Lexington breached that duty (Second Claim for Relief) (id. ¶¶ 39–42); equitable contribution from Lexington for defense costs (Third Claim for Relief)

---

[2] The Hawaii state action is captioned Nautilus Insurance Co. v. Lexington Insurance Co. et al., Circuit Court for the Second Circuit of Hawaii, Civil No. 09-1-0700-03.

(id. ¶¶ 43–46); equitable contribution from Lexington for indemnity payments (Fourth Cause of Action) (id. ¶¶ 47–50); and reimbursement of attorney fees, expert fees, investigative costs, other species of defense costs, and any settlement or related indemnification payments (Fifth Cause of Action) (id. ¶¶ 51–54).[3]  On November 10, 2009, Lexington filed a Notice of Removal in this Court, removing the action to the District of Hawaii on the basis of diversity jurisdiction.[4] ("Removal Not.," Doc. # 1.)

On July 16, 2010, Lexington filed a Motion for Summary Judgment ("MSJ," Doc. # 22) and a Concise Statement of Facts in support of its Motion ("MSJ CSOF," Docs. ## 23–24).  On September 30, 2010, Nautilus filed an Opposition to the Motion for Summary Judgment.  ("Opp'n to MSJ," Doc. # 36.) On October 11, 2010, Lexington filed a Reply.  ("MSJ Reply," Doc. # 40.)

---

[3] Nautilus denotes its first, second, and third claims as "Claims for Relief" and its fourth and fifth claims as "Causes of Action."

[4] Lexington asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332 on the grounds that Lexington is a Delaware corporation with its principal place of business in Massachusetts (Removal Not. ¶ 5) and Nautilus is an Arizona corporation with its principal place of business in Arizona (id. ¶ 4; Compl. ¶ 1.) Lexington provides that the amount in controversy exceeds $75,000 exclusive of interest and costs because the Goo Construction Action, which provided the basis for this suit, resulted in a $232,000 jury verdict against VP & PK.  (Removal Not. ¶ 8.)

On August 12, 2010, Nautilus filed a Motion for Partial Summary Judgment ("MPSJ," Doc. # 28) as to the First and Second Claims for Relief and a Concise Statement of Facts in support of its Motion ("MPSJ CSOF," Doc. # 29).[5] On October 4, 2010, Lexington filed an Opposition to the Motion for Partial Summary Judgment. ("Opp'n to MPSJ," Doc. # 37.) On the same day, Lexington filed an Objection to Nautilus's Concise Statement of Facts in Support of its Motion for Partial Summary Judgment. ("Obj. to MPSJ CSOF," Doc. # 38.) On October 8, 2010, Nautilus filed a Reply. ("MPSJ Reply," Doc. # 39.) Nautilus filed a Supplemental Reply on October 13, 2010. ("MPSJ Supp. Reply," Doc. # 41.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

---

[5] Nautilus requests summary judgment in its favor "on the First and Second Claims for Relief, said order finding as a matter of law that Lexington Insurance Company had a legal duty to defend its insured VP & PK in the 'Underlying Action' and that Lexington breached that duty." (MPSJ at 1.) However, the Second Claim for Relief concerns the duty to indemnify, not the duty to defend. (Compl. ¶¶ 39–42.) The Third Claim for Relief concerns equitable contribution for defense costs (id. ¶¶ 43–46), which Nautilus argues that it is entitled to in its briefing. In light of these facts, the Court will construe Nautilus's motion as requesting summary judgment in its favor on the First and Third Claims for Relief.

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Porter v. Cal. Dep't</u>

<u>of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d

1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of

factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323–24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial—usually,

but not always, the defendant—has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

For the reasons set forth below, the Court concludes that Lexington is entitled to summary judgment as to all counts.  As such, Nautilus's Motion for Partial Summary Judgment is denied.

I.      Hawaii Insurance Coverage Law

State law governs the resolution of substantive issues in this diversity action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

Insurance policies are subject to the general rules of contract construction.  Dawes v. First Ins. Co. of Haw., Ltd., 883 P.2d 38, 42 (Haw. 1994).  The terms of insurance policies must be interpreted according to their plain, ordinary and accepted sense in common speech, unless it appears from the language of the policies that a different meaning is intended.  Id.; see Oahu Transit Servs., Inc. v. Northfield Ins. Co., 112 P.3d 717, 722 n.7 (Haw. 2005) ("Ambiguity exists . . . only when the [policy] taken as a whole, is reasonably subject to differing interpretation.") (citation omitted).  Under Hawaii law, construction of a contract, where material facts are undisputed, is a question of law for the court.  See Nat'l Union Fire Ins. Co. v. Reynolds, 889 P.2d 67, 71 (Haw. App. 1995); Cho Mark Oriental Food Ltd. v. K & K Int'l, 836 P.2d 1057, 1064 (Haw. 1992).  When interpreting insurance policies, courts should look to the entirety of their terms and conditions.  AIG Haw. Ins. Co. v. Estate of Caraang, 851 P.2d 321, 326 (Haw. 1993).  Furthermore, Hawaii courts have recognized that "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy.'"  Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd., 205 P.3d 596, 614–15 (Haw. App. 2009) (quoting First Ins. Co. of Haw. v. State, 665 P.2d 648, 655 (Haw. 1983)).

18

II.    <u>Duty to Defend and Equitable Contribution for Defense Costs</u>

In its First Claim for Relief, Nautilus seeks a declaration that Lexington owed VP & PK a duty to defend under the Lexington Policy and that Lexington breached that duty.  (Compl. ¶¶ 35–38.)  Nautilus seeks equitable contribution for defense costs in its Third Claim for Relief (<u>id.</u> ¶¶ 43–46) and reimbursement for defense costs in its Fifth Cause of Action (<u>id.</u> ¶¶ 51–54).[6] Nautilus does not deny that it had a duty to defend VP & PK.  Rather, Nautilus argues that Lexington also had a duty to defend and therefore Lexington should bear a proportionate share of the defense costs.[7]  (<u>See</u> Compl. ¶¶ 13–14, 45; MPSJ at 18; MPSJ Reply at 7–8.)

---

[6] Nautilus's Fifth Cause of Action specifically requests reimbursement for "attorney fees, expert fees, investigative costs, other species of defense costs, and any settlement or related indemnification payments that have been or will be incurred or expended by Nautilus that arise out of or are related to the claims asserted against VP&PK in the Action."  (Compl. ¶ 53.)

[7] Because the underlying action has already been resolved, it appears that Nautilus primarily seeks equitable contribution for defense costs.  "Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." <u>Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.</u>, 72 Cal. App. 4th 1063, 1078 (Cal. Ct. App. 1999) (emphasis and quotations omitted).  The Court will consider the issue of equitable contribution for defense costs in conjunction with the duty to defend.

A.   General Principles Regarding an Insurer's Duty to Defend

"[T]he obligation of an insurer to defend its insured is separate and distinct from an insurer's obligation to pay a judgment against its insured." First Ins., 665 P.2d at 416–17.  An insurer's duty to defend is contractual in nature, and courts "must look to the language of the particular policy involved to determine the scope of that duty." Commerce & Indus. Ins. Co. v. Bank of Haw., 832 P.2d 733, 735 (Haw. 1992) (citation omitted).  Under Hawaii insurance law, the duty to defend arises whenever there is a potential for indemnification liability from the insurer to the insured.  Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994); see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004).  The duty to defend is thus much broader than the duty to indemnify and does not depend on whether liability is ultimately established.  Commerce, 832 P.2d at 735.  Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured.  See, e.g., Dairy Rd. Partners v. Island Ins. Co. Ltd., 992 P.2d 93, 108–16 (Haw. 2000); Commerce, 832 P.2d at 735; Pancakes of Haw., Inc. v. Pomare Props. Corp., 944 P.2d 83, 88 (Haw. App. 1997). For the duty to defend to arise, the potential insured need only show that the

20

underlying claim may fall within policy coverage.  <u>Dairy Rd. Partners</u>, 992 P.2d at 108–16.

Where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend.  <u>Hawaiian Holiday</u>, 872 P.2d at 233.  In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying <u>facts</u> alleged in the pleadings.  <u>See</u> <u>Oahu Transit Servs.</u>, 112 P.3d at 721; <u>Bayudan v. Tradewind Ins. Co.</u>, 957 P.2d 1061, 1069 (Haw. App. 1998).

B.     <u>Effect of Dairy Road Partners</u>

Nautilus cites the Hawaii Supreme Court case <u>Dairy Road Partners v. Island Insurance</u>, 992 P.2d 93 (Haw. 2000) for the proposition that "an insurer may <u>not</u> consider extrinsic documents or other matters beyond the Complaint to justify its refusal to defend its insured when the allegations provide the potential for coverage."  (MPSJ at 7–8.)  As such, Nautilus argues that Lexington improperly compared the Nautilus and Lexington Policies to determine that Lexington was the excess insurer and therefore had no duty to defend.  (<u>Id.</u> at 8.)  Nautilus's reliance on <u>Dairy Road Partners</u> is inapposite.

In <u>Dairy Road Partners</u>, the Hawaii Supreme Court considered whether an insurer is permitted to use extrinsic evidence to disclaim its duty to

21

defend, despite the presence of allegations in the complaint that establish the

possibility of coverage.  Dairy Rd. Partners, 992 P.2d at 110.  Specifically, the

insurer in that case sought to rely on an affidavit and deposition to establish that

the insured's conduct fell within a policy exclusion such that the insurer's duty to

defend did not arise.  Id. at 109.  In evaluating this issue, the Hawaii Supreme

Court was concerned about two unintended consequences of permitting insurers to

rely on factual sources beyond the pleadings.  Id. at 112.  First, the court worried

that "the insured may be saddled with the Procrustean dilemma of being forced to

adduce facts proving his or her own liability in the underlying lawsuit in order to

satisfy the insurer that there may be merit to the underlying covered claim."  Id.

Second, the court posited that permitting insurers to rely on factual sources beyond

the pleadings may result in inconsistent judgments.  Id.  For example, relying on

facts outside the pleadings, a court in a declaratory judgment action could conclude

that the insurer has no duty to defend because there is no possibility of coverage.

See id.  Thereafter, a jury, not bound by the declaratory judgment action and

possibly presented with different facts, could find that the insured is liable in the

underlying action.  See id.  Because of the declaratory judgment action's

determination that there was no duty to defend, the insured would be barred by res

judicata from recovering posttrial attorneys fees and costs from the insurer.  See id.

The Dairy Road Partners court worried that such a result would be "fundamentally unfair to the insured."  Id.

        After taking an inventory of its own past cases as well as cases from other jurisdictions, the court in Dairy Road Partners held, in accordance with the majority of jurisdictions, that insurers are prohibited from relying upon extrinsic evidence for the purpose of disclaiming the duty to defend.  Id. at 113, 117. However, the court also adopted an exception to this rule, in that the insurer may rely upon extrinsic facts to disclaim liability only when the relevant facts "'will not be resolved by the trial of the third party's suit against the insured.'"  Id. at 113, 117 (citations omitted).  The court then held that the insurer in the case before it could not rely on the facts adduced in the affidavit and deposition to disclaim its duty to defend because "it was impossible for [the insurer] to show that the facts upon which it relied would be resolved identically in the underlying lawsuit."  Id. at 117.

        The instant case stands in stark contrast to the one faced by the Hawaii Supreme Court in Dairy Road Partners.  In the present case, Lexington does not urge the Court to examine facts regarding the underlying lawsuit.  (See Opp'n to MPSJ at 6.)  Rather, Lexington looks to the Nautilus and Lexington Policies, which were not at issue in the underlying action, to disclaim its duty to defend.

(See MSJ at 2.)  Additionally, neither of the concerns raised by the court in Dairy Road Partners are applicable to this case.  VP & PK was not forced to allege facts proving its own liability in order to trigger the duty to defend because Nautilus had already agreed to conduct VP & PK's defense.  There was also no risk of inconsistent judgments because the Nautilus and Lexington Policies were not before the jury in the underlying action.  (See MPSJ CSOF Ex. B.)

In its Reply in support of its Motion for Partial Summary Judgment, Nautilus appears to retreat from its position that Lexington was not permitted to even look to the terms of its own insurance policy when determining whether it had a duty to defend VP & PK in the underlying action.  (See MPSJ Reply at 2–5.) However, Nautilus continues to assert that it was improper under Dairy Road Partners for Lexington to look to the terms of the Nautilus Policy.  (See id.)  The Court is not persuaded by this argument.  Aside from the fact that the holding in Dairy Road Partners does not dictate such a result, to find that insurers may not consider other policies covering their insured would deprive them of essential information in ascertaining whether there is a duty to defend.

Accordingly, the Court concludes that Hawaii law would permit Lexington to examine both the Nautilus and Lexington Policies in determining whether it had a duty to defend under the circumstances present in this case.

C.    The Nautilus and Lexington Policies: Effect of Excess "Other Insurance" Clauses

Lexington claims that it did not breach its duty to defend because, by virtue of the "other insurance" clauses in the Nautilus and Lexington Policies, Nautilus was the primary insurer and Lexington was the excess insurer.[8]  (MSJ at 11–18.)  Nautilus counters that because both the Nautilus and Lexington Policies include excess language, a literal construction of the two "other insurance" clauses would result in neither insurer providing coverage.  (MPSJ at 16.)  Nautilus thus claims that the Nautilus and Lexington Policies are "mutually repugnant" so that Nautilus and Lexington are required to share the duty to defend VP & PK.  (Id.)

---

[8] This is in contrast to a situation where an insurer claims that it is a true excess insurer.  "Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability . . . .  'Excess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted."  Olympic Ins. Co. v. Emp'rs Surplus Lines Ins. Co., 126 Cal. App. 3d 597–98 (Cal. Ct. App. 1981).  In other words, "excess insurance is insurance that is expressly understood by both the insurer and insured to be secondary to specific underlying coverage which will not begin until after that underlying coverage is exhausted and which does not broaden that underlying coverage."  Century Sur. Co. v. United Pac. Ins. Co., 109 Cal. App. 4th 1246, 1255 (Cal. Ct. App. 2003).  The excess insurance issue present here arises from an insurer's attempt to reduce a primary coverage obligation into excess liability through use of an "other insurance" clause.  To the extent that Lexington relies on cases concerning true excess insurance carriers, that reliance is misplaced.

Because Hawaii contains sparse authority with regard to "other insurance"

provisions, the Court will look to California law for guidance.[9]

   "Insurance policies commonly include 'other insurance' provisions

which attempt to limit the insurer's liability to the extent that other insurance

covers the same risk."[10] Century Sur. Co., 109 Cal. App. 4th at 1255 (citations

omitted).  "Contractual terms of insurance coverage are honored whenever

possible.  The courts will therefore generally honor the language of excess 'other

insurance' clauses when no prejudice to the interests of the insured will ensue."

Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279, 1304 (Cal. Ct.

App. 1998).  However, if two or more primary insurers' policies contain excess

"other insurance" clauses purporting to be excess to each other, the conflicting

_____

[9] Hawaii courts will generally look to California law for guidance when Hawaii precedent is absent on a specific issue.  Locricchio v. Legal Servs. Corp., 833 F.2d 1352, 1357 (9th Cir. 1987); see also Sutherland v. Kanohi Ohana, Ltd., 776 F.2d 1425, 1427 n.4 (9th Cir. 1985).

[10] There are three typical types of "other insurance" provisions.  Pro rata clauses provide that if there is other valid and collectible insurance, then the insurer is not liable for more than its pro rata share of the loss.  Hartford Cas. Ins. Co. v. Travelers Indem. Co., 110 Cal. App. 4th 710, 725 n.12 (Cal. Ct. App. 2003). Excess clauses provide that if there is other valid and collectible insurance which covers the loss, then the excess insurer is not liable except to the extent that the loss exceeds such other valid and collectible insurance.  Id.  Escape clauses provide that the insurer is not liable for any loss that is covered by other insurance. Id.  In the instant case, the Nautilus and Lexington "other insurance" clauses both purport to be excess "other insurance" clauses.

clauses are ignored, and the loss is prorated among the insurers on the ground that the insured would otherwise be deprived of coverage. Id. at 1304–05. "Thus, although a true excess insurer—one that is solely and explicitly an excess insurer providing only secondary coverage—has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk, primary insurers with conflicting excess 'other insurance' clauses can have immediate defense obligations." Id. at 1305.

Although "the recent trend is against rigid enforcement of excess only clauses," the California Court of Appeal recently enforced the terms of an excess only clause in a situation similar to that presently before the Court. See Hartford, 110 Cal. App. 4th at 726. In Hartford, a landlord was covered as an additional insured on its tenant's commercial general liability policy. Id. at 716. The landlord's own commercial general liability policy contained the following "other insurance" provision:

> This insurance is excess over any of the other Insurance; whether primary, excess, contingent or on any other basis: . . . (4) that is valid and collectible insurance available to you [the landlord] if you are added as an additional insured under any other policy. When this Insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other Insurer has a duty to defend.

27

Id. at 714–15.  The tenant's insurance policy contained a similar "other insurance" provision.  Id. at 726.  Following initiation of a lawsuit against the landlord by the estate of the tenant's deceased employee, the tenant's insurer brought an action for declaratory relief against the landlord's insurer.  Id. at 713.  In the action, the tenant's insurer sought a declaration that the landlord was not entitled to defense or indemnity in the underlying action by virtue of being listed as an additional insured under the tenant's policy.  Id.  The tenant's insurer also sought reimbursement of funds expended for defense and indemnity.  Id.  Following cross motions for summary judgment, the trial court gave effect to the excess "other insurance" clause contained in the landlord's policy, thereby forcing the tenant's insurer to pay all of the defense and indemnity costs of the underlying action.  Id. at 724.

The California Court of Appeal affirmed this decision and held that the trial court had properly enforced the terms of the excess "other insurance" clause and that it thus correctly declined to order equitable contribution.  Id. at 724–27.  In so holding, the court observed that the terms of the insurance policies did not conflict and the policies at issue contained narrow exceptions to their operation as primary insurance.  Id.  The court stated that "[b]oth policies declare themselves to be excess in the situation where the parties and the insurers are most likely to intend that result—when the insured is covered as an additional insured on

28

another party's policy for some specific event or situation."  Id. at 726.

Additionally, the court found that the tenant's insurer had accepted the risk of

covering additional insureds, such as the landlord, and had presumably structured

its premiums accordingly.  Id. at 727.  The court concluded that "[e]quity should

not be employed to override the terms of the insurance policies in this case."  Id.

In the instant action, the excess "other insurance" provisions

contained in the Nautilus and Lexington Policies provide as follows:

This insurance is excess over:

. . . .

(2)     Any other primary insurance available to you . . . for
        which you have been added as an additional insured by
        attachment of an endorsement.

When this insurance is excess, we will have no duty under
Coverages A or B to defend the insured against any "suit" if
any other insurer has a duty to defend the insured against that
"suit".  If no other insurer defends, we will undertake to do so,
but we will be entitled to the insured's rights against all those
other insurers.

(Nautilus Pol. at 00239; Lexington Pol. at 0000571.)

First, as in Hartford, a literal construction of the Nautilus and

Lexington Policies reveals that although their "other insurance" provisions contain

nearly identical language, they do not in fact conflict.  By their own terms, both

29

policies claim to be excess over "[a]ny other primary insurance available to you . . . for which you have been added as an additional insured."  (Nautilus Pol. at 00239; Lexington Pol. at 0000571.)  Both policies provide that "you" refers only to a "Named Insured."[11]  (Nautilus Pol. at 00229; Lexington Pol. at 0000552.)  Kila Kila is the Named Insured in the Nautilus Policy and VP & PK is an Additional Insured.  (Nautilus Pol. at 00220, 00336.)  VP & PK is the Named Insured in the Lexington Policy.  (Lexington Pol. at 0000548.)  Because an additional insured is not the same as a named insured, the "other insurance" provisions of the Nautilus and Lexington Policies have different application even though their wording is

---

[11] Specifically, the Nautilus and Lexington Policies both provide as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

(Nautilus Pol. at 00229; Lexington Pol. at 0000552.)  Nautilus appears to support the fact that "you" refers to Kila Kila in the Nautilus Policy.  For example, Nautilus states that the language of the additional insured endorsement "include[s] the 'standard' ISO requirement that the Named Insured Kila Kila be found liable in order for the policy to provide coverage to the Additional Insured VP & PK."  (MPSJ at 2.)  The additional insured endorsement provides that VP & PK is added as an insured, "but only for liability arising out of your negligence."  (Nautilus Pol. at 00336.)  Based on Nautilus's interpretation, "your" must refer to Kila Kila.  (See also Compl. ¶ 19.)

nearly identical.  Substituting the name of the Named Insured into these provisions

reveals as much:

> <u>Nautilus Policy</u>
> This insurance is excess over any other insurance available to you
> [Kila Kila] for which you [Kila Kila] have been added as an additional
> insured.
>
> <u>Lexington Policy</u>
> This insurance is excess over any other insurance available to you [VP
> & PK] for which you [VP & PK] have been added as an additional
> insured.

Because VP & PK was added as an additional insured in the Nautilus

Policy, the other insurance provision of the Lexington Policy applies.[12]  Kila Kila

---

[12] Lexington attempts to bolster its argument that it was the excess insurer by pointing to the contract between Kila Kila and VP & PK.  (MSJ at 17–18; <u>see</u> MSJ CSOF Ex. C.)  In particular, Lexington relies on what purports to be Exhibit G to the Conditions of Contract, which provides as follows:

> **11.1.4.3    Commercial General Liability (other than Auto)**
>
> . . . .
>
> The liability insurance in paragraphs 2 and 3 above shall
> be endorsed, as outlined in Insurance Exhibit to:
>
> . . . .
>
> 11.1.4.3.b    indicate that such coverage as is afforded by
> such policies to the Additional Insureds,
> shall be primary and non-contributing to any
> other similar insurance available to the
>
> (continued...)

was not added as an additional insured under any policy, and as such, the other

insurance provision of the Nautilus Policy does not apply.  As indicated above, the

Lexington and Nautilus Policies are not mutually repugnant just because they both

contain an "other insurance" provision with excess language.  A literal construction

of these policies reveals that the Nautilus "other insurance" provision is

inapplicable.  See also Liberty Mut., 205 P.3d at 619 (finding that "other

insurance" provisions were not mutually repugnant when they were "consistent

with regard to which policies were primary and which were excess").

---

[12](...continued)

Additional Insureds.

(MSJ CSOF Ex. C at 0000530.)  Nautilus, however, contends that the Conditions of Contract document was not part of the contract between Kila Kila and VP & PK. (Opp'n to MSJ at 6–7.)  In fact, Nautilus submits the declaration of Kila Kila owner Duane P. Ting, who states that he entered into the VP & PK contract on behalf of Kila Kila and that the Conditions of Contract containing the above quoted language was not part of this agreement.  (Opp'n to MSJ, Declaration of Duane P. Ting ("Ting Decl.") ¶¶ 2–4.)  Nautilus replies that defense counsel provided by Nautilus to defend Kila Kila and VP & PK in the underlying action transmitted to it the Conditions of Contract and stated that he thought it was incorporated into the contract between Kila Kila and VP & PK.  (MSJ Reply at 6.)

The Court need not resolve this discrepancy.  Without considering the Conditions of Contract document, the Court determines that the excess "other insurance" provisions in the Nautilus and Lexington Policies do not conflict. Accordingly, the dispute regarding the Conditions of Contract does not create a genuine issue of material fact and Lexington is entitled to judgment as a matter of law that its excess "other insurance" provision should be given effect.

Second, as in <u>Hartford</u>, the "other insurance" provision in the Lexington Policy applies when the insured is covered as an additional insured on another party's policy.  This is a narrow, and anticipated, exception to the Lexington Policy's operation as primary insurance.  In contrast with other cases, in which the California courts have ordered equitable contribution, the Lexington Policy does not contain broad excess only clauses that purport to make its coverage excess whenever there is other insurance.  The Lexington "other insurance" provision also does not resemble an escape clause, "where the insurer appears to offer coverage that in fact evaporates in the presence of other insurance." <u>See</u> <u>Hartford</u>, 110 Cal. App. 4th at 726–27.

Third, as in <u>Hartford</u>, Nautilus was aware that VP & PK would be covered under the Nautilus Policy in certain situations.  Nautilus accepted this risk and presumably charged an appropriate premium to reflect the risk.  This case is not one that involves unanticipated risk shifting.

Furthermore, although Hawaii courts have not yet passed on the situation presented in the instant action, at least one Hawaii court has recognized the utility of excess "other insurance" clauses: "[S]uch clauses serve valid purposes, such as helping to keep costs of premiums down.  By allowing insurance companies to set the priority of payment through excess provisions, they are better

33

able to assess the risk of providing the coverage and to charge the insured accordingly.  Rates may increase, however, if insurers are required to serve as the primary insurer in every instance."  Liberty Mut., 205 P.3d at 618–19.  In articulating this viewpoint, the Liberty Mutual court cited with approval the following quotation:  "[Excess clauses] serve valid functions.  They establish which insurer has a duty to investigate and defend.  The primary insurer has the first duty to defend.  The excess insurer does not expect to be called on for these costs, and charges the insured accordingly.  Second, the clause guards against the duplication of benefits.  Third, these clauses help keep the cost of premiums down."  Mustain v. U.S. Fid. & Guar. Co., 925 P.2d 533, 539 (Okla. 1996) (Summers, J., dissenting) (citations omitted).  Although Liberty Mutual involved an "other insurance" clause in an uninsured motorist policy, its pronouncement on "other insurance" provisions is nevertheless persuasive.

At the hearing, Nautilus brought the following case to the attention of the Court: First Insurance Co. of Hawaii, Ltd. v. Continental Casualty Co., 466 F.2d 807 (9th Cir. 1972).  This case involved a dispute between two insurance companies regarding their respective liability for defense costs incurred in an underlying action.  Continental Cas., 466 F.2d at 809.  Applying Hawaii law, the Ninth Circuit stated the following: "[W]e believe it equitable to hold . . . that

whatever the division of the principal liability, insurance companies . . . with a

mutual duty to defend should bear the defense costs equally." Id. at 811.  The

Ninth Circuit opinion provides little explanation or guidance with regard to this

holding.  A review of the district court opinion in Continental Casualty reveals

that, in contrast to the instant action, the court was faced with conflicting "other

insurance" provisions.  In that case, the First Insurance Policy contained a pro rata

"other insurance" provision and the Continental Policy contained an excess "other

insurance" provision.  See First Ins. Co. of Haw., Ltd. v. Continental Cas. Co., 313

F. Supp. 808, 814 (D. Haw. 1970).  In the absence of any controlling Hawaii

authority, the district court concluded that Hawaii courts would likely adopt the

view that Continental, benefitted by the excess "other insurance" provision, should

only be liable for the amount that exceeded the limits of the First Insurance Policy,

which contained the pro rata "other insurance" provision.  Id. at 815.  On these

facts, the Ninth Circuit determined that, contrary to the district court's ruling, both

Continental and First Insurance should bear the defense costs equally.  Continental

Cas., 466 F.2d at 811.

        In stark contrast to the facts in Continental Casualty, the Nautilus and

Lexington Policies at issue here both contain excess "other insurance" provisions.

Additionally, the literal terms of those provisions do not conflict and provide that

the Lexington Policy is excess to the Nautilus Policy such that Lexington's

obligation to pay defense costs is triggered when the Nautilus Policy is exhausted.

Additionally, although the Ninth Circuit decided Continental Casualty in 1972,

there is a paucity of Hawaii cases that have cited it as authority, and there is not a

single Hawaii case that has cited its finding that defense costs should be mutually

shared.  In contrast, in Liberty Mutual, the Hawaii Court of Appeal recently upheld

the application of an excess "other insurance" clause in an uninsured motorist

policy, which created a priority of coverage among multiple insurers.  See Liberty

Mut., 205 P.3d at 614–15.  On these facts, Continental Casualty is not controlling.

Applying the literal terms of the policies and giving effect to the

excess "other insurance" provision in the Lexington Policy, the Court concludes

that Nautilus is not entitled to equitable contribution from Lexington for the cost of

defending VP & PK.  With regard to the duty to defend, the Nautilus Policy

provides as follows:

> Our right and duty to defend ends when we have used up the
> applicable limit of insurance in the payment of judgments or
> settlements under Coverages A or B or medical expenses under
> Coverage C.

(Nautilus Pol. at 00229.)  Additionally, the Lexington Policy states that:

> When this insurance is excess, we will have no duty under Coverages
> A or B to defend the insured against any "suit" if any other insurer has

36

> a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Lexington Pol. at 0000571.) Because the Lexington Policy is excess by virtue of the "other insurance" clause, as long as Nautilus had a duty to defend VP & PK, Lexington's duty to defend never arose. No facts are presently before the Court to show that Nautilus exhausted its coverage and neither Nautilus nor Lexington contend that the underlying action was not an "occurrence" within the meaning of the policies. In the absence of such facts, Nautilus had a duty to defend VP & PK for the lawsuit.

Accordingly, the Court concludes that under the circumstances of the present case, Hawaii courts would enforce the terms of the excess "other insurance" provision in the Lexington Policy. Applying these terms, it is apparent that Lexington did not breach its duty to defend VP & PK and that Nautilus is not entitled to equitable contribution for defense costs.

D.    Nautilus's Additional Arguments

Nautilus raises several arguments, aside from those discussed above, in support of its position. The Court addresses these arguments in turn.

First, Nautilus argues that the letter Lexington sent to VP & PK acknowledging that it would indemnify it for the jury verdict (see MSJ CSOF Ex.

37

I) constitutes an admission by a party opponent under Federal Rules of Evidence 801(d)(2).  (MPSJ at 11–12.)  In support of its position, Nautilus points to the following language in the letter:

> We understand that there is a pending motion for new trial and that there is a possibility that there may be an appeal by one or more parties . . . in that event of an appeal and/or new trial, Lexington will participate in the defense of, investigate and/or monitor the case but will only do so under full reservation of rights . . . .
>
> . . . .
>
> Lexington further reserves the right to withdraw from the further defense, should facts show there is no potential coverage under the Policy afforded by Lexington, or if a court determines there is no duty to defend and/or no duty to indemnify.

(MSJ CSOF Ex. I at 00147–48.)  However, Nautilus neglects to reference the following language from the same letter:

> It is clear that Nautilus did in fact defend VP&PK as it was required to as its primary insurer; therefore, Lexington as the excess insurer did not fail nor reject its duty to defend.  Rather, as the Policy specifies that duty was undertaken by the primary insurer Nautilus and therefore Lexington was not obligated to duplicate such defense.

(Id. at 00150.)  The above quotation negates Nautilus's argument that Lexington admitted that it breached its duty to defend.  Furthermore, viewing the alleged admission in context, the letter was agreeing to indemnify VP & PK for a judgment

that Nautilus stated it would not pay.  The alleged admission is premised on this

fact and merely states that if there is a new trial based on this judgment,

"Lexington will participate in the defense of, investigate and/or monitor the case

but will only do so under full reservation of rights."  Lexington does not admit that

it breached its duty to defend by not defending VP & PK in the underlying action

that gave rise to the judgment.

Additionally, Nautilus vehemently argues that "for Lexington to show

that it did not have a duty to defend, it would have to show that it was <u>impossible</u>

for there to be coverage under the Lexington Policy."  (MPSJ Supp. Reply at 2–3;

<u>see also</u> MPSJ at 12–14.)  Nautilus submitted copies of the following three

unpublished cases in support of this assertion: <u>State Farm Fire & Casualty Co. v.

Thompson</u>, 2010 WL 2017101, at *6 (D. Haw. May 20, 2010); <u>RLI Insurance Co.

v. Thompson</u>, 2010 WL 1438925, at *7 (D. Haw. Apr. 12, 2010); and <u>Island

Insurance Co., Ltd. v. Arakaki</u>, 2010 WL 2414924, at *6 (Haw. App. June 16,

2010).  (MPSJ Supp. Reply Exs. M, N, O.)  Although the Court does not cite to

unpublished opinions as precedent, these cases are readily distinguishable from the

instant action.  Each of these three cases involved an insurer filing a complaint for

declaratory judgment against its insured, seeking a declaration that the insurer had

no duty to defend and/or indemnify the insured in an underlying lawsuit.  On these

facts, all three cases stated that for an insurer to be entitled to a declaration that it

has no duty to defend, the insurer has the burden of proving that it would be

impossible for the insured to be found liable for a claim covered by the policy.

This is not the situation currently faced by the Court.  Here, neither party is

disputing that VP & PK was entitled to a defense; the dispute is over which insurer

was required to pay for the defense.  As such, there is no risk that VP & PK would

not be provided with a defense in the underlying action, and the policy

underpinning the complaint allegation rule does not apply.

Furthermore, contrary to Nautilus's contention, the possibility that

Lexington may at some later point have a duty to indemnify VP & PK does not

trigger its duty to defend.  This is because by operation of the excess "other

insurance" clause in the Lexington Policy, Lexington's duty to defend did not arise

if another insurer had a duty to defend.  Nautilus had a duty to defend at the outset,

and did in fact defend VP & PK, preventing Lexington's duty to defend from being

triggered.  This interpretation is in accordance with <u>Liberty Mutual</u>'s

pronouncement on "other insurance" clauses and fulfills the expectations of the parties when entering into such insurance agreements.

Nautilus also argues that the fact that Lexington indemnified VP & PK establishes that it had a duty to defend. (MPSJ Reply at 5.) This overlooks the fact that the existence of a duty to defend must be determined at the outset. See Commerce, 832 P.2d at 735. Nautilus cannot rely on the outcome of the underlying action and Lexington's subsequent indemnification of VP & PK to establish that Lexington had a duty to defend VP & PK and that Nautilus is entitled to equitable contribution for defense costs.

Finally, Nautilus argues that although VP & PK formally tendered its defense to Nautilus, Lexington's duty to defend was still triggered because Nautilus provided notice of the underlying action to Lexington in a letter dated February 28, 2008.[13] (MPSJ at 7; MSJ CSOF Ex. J.) The Court need not reach the merits of this argument because, even though Nautilus informed Lexington of the

---

[13] At the hearing, counsel for Nautilus argued that this letter was sufficient to trigger Lexington's duty to defend and that Lexington never replied to this letter. In opposition, counsel for Lexington argued that Lexington did reply to Nautilus's letter. (See MSJ Reply Ex. N.) The Court expresses no opinion as to this dispute because it is not important to its opinion herein.

underlying action, Hawaii courts would still enforce the terms of the excess "other insurance" provision in the Lexington Policy.

In sum, the Court concludes that Lexington was entitled to consider the Nautilus Policy in determining whether it had a duty to defend.  Predicting Hawaii law, the Court enforces the excess "other insurance" provision in the Lexington Policy as written and determines that Nautilus is not entitled to equitable contribution for defense costs.

Accordingly, the Court GRANTS Lexington's Motion for Summary Judgment as to the First Claim for Relief, the Third Claim for Relief, and the Fifth Cause of Action inasmuch as it relates to the duty to defend.  The Court DENIES Nautilus's Motion for Partial Summary Judgment as to the First Claim for Relief and the Third Claim for Relief.[14]

III.    Duty to Indemnify

In its Second Claim for Relief, Nautilus seeks a declaration that Lexington owes VP & PK a duty to indemnify under the Lexington Policy and that

---

[14] As noted above, the Court construes Nautilus's Motion for Partial Summary Judgment as requesting summary judgment in its favor on the Third Claim for Relief.

Lexington breached that duty.  (Compl. ¶¶ 39–42.)  Nautilus also seeks equitable

contribution for indemnifying VP & PK in its Fourth Cause of Action (id. ¶¶

47–50) and reimbursement for indemnification payments in its Fifth Cause of

Action (id. ¶¶ 51–54).[15]  It is undisputed that Lexington indemnified VP & PK for

the judgment that was entered against it in the <u>Goo Construction Action</u>.[16]  (<u>See</u>

MSJ CSOF Exs. A, B.)  Because Lexington has already satisfied the duty to

indemnify, Nautilus's claims regarding this duty are moot.  Accordingly, the Court

GRANTS Lexington's Motion for Summary Judgment as to the Second Claim for

Relief, the Fourth Cause of Action, and inasmuch of the Fifth Cause of Action as

relates to the duty to indemnify.  These claims are DISMISSED AS MOOT.

---

[15] As stated <u>supra</u>, the Fifth Cause of Action requests reimbursement for Lexington's equitable allocated share under both the duty to defend and the duty to indemnify.

[16] Lexington claims that it indemnified VP & PK because Nautilus refused to do so.  (MSJ at 25–26.)  Nautilus counters that according to the terms of its policy it was only required to indemnify VP & PK for liability arising out of Kila Kila's actions or work on the Project.  (Opp'n to MSJ at 4–5.)  Because the jury found that Kila Kila was not liable, Nautilus argues that the judgment against VP & PK could not have been because of Kila Kila's actions, and as such, Nautilus was not required to indemnify VP & PK.  (<u>See</u> <u>id.</u>)  At the hearing, counsel for Lexington conceded that based on the jury verdict in the underlying action, Lexington would not contend that Nautilus was required to indemnify VP & PK.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Lexington's Motion for Summary Judgment (Doc. # 22) and DENIES Nautilus's Motion for Partial Summary Judgment (Doc. # 28).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 15, 2010.

_____
David Alan Ezra
United States District Judge

<u>Nautilus Insurance Co. v. Lexington Insurance Co. et al.</u>, Cv. No. 09-00537 DAE-LEK;  ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT